J-A26039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DALE P. DOLESKI, | : | |
| | : | |
| Appellant | : | No. 270 WDA 2016 |

Appeal from the Judgment of Sentence April 2, 2013
in the Court of Common Pleas of McKean County,
Criminal Division, No(s): CP-42-CR-0000383-2012

BEFORE: BENDER, P.J.E., RANSOM and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED DECEMBER 5, 2016**

Dale P. Doleski ("Doleski") appeals from the judgment of sentence imposed following his conviction of one count each of driving under the influence – general impairment and driving under the influence – high rate of alcohol.[1] We affirm.

The trial court set forth the relevant factual and procedural background, which we adopt for the purpose of this appeal. **See** Trial Court Opinion, 5/3/16, at 1-3.

On appeal, Doleski raises the following issues for our review:

1. Did the lower court err in admitting the Commonwealth's tendered blood[]alcohol [content ("BAC")] test results [] into evidence as a valid duplicate of the original?

2. Did the lower court err in concluding that [Doleski] was guilty of driving or operating a motor vehicle under the influence of alcohol on a "trafficway" of the Commonwealth?

---

[1] **See** 75 Pa.C.S.A. § 3802(a)(1), (b).

Brief for Appellant at 5.[2]

In his first issue, Doleski contends that the trial court erred in admitting a copy of his BAC test results into evidence at trial as a duplicate of the original test results pursuant to Pa.R.E. 1003.[3] Brief for Appellant at 9-13. Doleski asserts that Pennsylvania State Police Corporal Daniel Moore ("Corporal Moore") did not receive the BAC test results until he returned to the hospital after processing Doleski at the barracks. *Id*. Doleski claims that, because Corporal Moore left the hospital after the blood test to process Doleski, and then later returned to the hospital to obtain a copy of the BAC test results, the Commonwealth failed to establish an adequate chain of custody. *Id*. at 14; *see also id*. (wherein Doleski queries "what other lab personnel had custody and control of the documentation before its delivery to [Corporal] Moore?"). Doleski asserts that this "failure" in the chain of custody makes the admission of the BAC test results "unfair." *Id*.

---

[2] In his brief, Dolseki has failed to comply with the requirements of Pa.R.A.P. 2119(a), which provides that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein …."

[3] Pursuant to Rule 1003 "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Pa.R.E. 1003. Pursuant to Rule 1001, "[a] 'duplicate' means a copy produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original." Pa.R.E. 1001(e).

Doleski also claims that the BAC test results should not have been admitted into evidence because the copy received by Corporal Moore on the evening of Doleski's arrest did not bear the signature of the lab director, who had not yet signed it. *Id*. Additionally, Doleski points out that, even though the individuals who drew his blood and tested it testified at trial, neither of them could recall the draw or the test independently of the BAC test results. *Id*. at 15. Doleski asserts that the admission of the BAC test results violated the confrontation clause of the United States Constitution on the basis that the BAC test results were "testimonial" and "its primary purpose is to establish or prove past events potentially relevant to later criminal prosecution." *Id*.

> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus, [this Court's] standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa. Super. 2012) (citation omitted).

The trial court addressed Doleski's first issue, set forth the relevant law, and concluded that it lacks merit. *See* Trial Court Opinion, 5/3/16, at 9-11. We agree with the reasoning of the trial court and affirm on this basis as to this issue. *See id*.

- 3 -

In his second issue, Doleski contends that the trial court erred in determining that the Commonwealth presented sufficient evidence to establish that the CCC roadway is a "trafficway" within the meaning of the Vehicle Code. Brief for Appellant at 15. Doleski asserts that the Commonwealth offered no evidence that the CCC roadway was publicly maintained, open to the public, or that it is a "highway" within the meaning of 75 Pa.C.S.A. §§ 102[4] and 3101.[5] *Id*. at 17. Doleski claims that the testimony of Corporal Moore was insufficient to establish that the CCC roadway is customarily open to the public. *Id*. at 18, 19.

The trial court addressed Doleski's sufficiency of the evidence issue, set forth the relevant law, and concluded that it lacks merit. *See* Trial Court Opinion, 5/3/16, at 5-7. We agree with the reasoning of the trial court, and affirm on this basis as to this issue. *See id*.

Judgment of sentence affirmed.

---

[4] Pursuant to section 102, a "highway" is defined as "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel. The term includes a roadway open to the use of the public for vehicular travel on grounds of a college or university or public or private school or public or historical park." 75 Pa.C.S.A. § 102.

[5] Pursuant to section 3101(b), entitled "**Serious traffic offenses**," "[t]he provisions of … Chapter 38 (relating to driving after imbibing alcohol or utilizing drugs) shall apply upon highways and trafficways throughout this Commonwealth." 75 Pa.C.S.A. § 3101(b).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/5/2016